UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

FREDERIC BYERS,

                       Plaintiff,

       v.

NEW PLYMOUTH SCHOOL
DISTRICT NO. 372, a corporate and
political body organized under the laws
and state of Idaho; JOLENE
PARINI-SHIPLEY, HERBERT FOUST,
DAVID BROGAN, GARY JOHNSTON,
and NADINE HORTON, in their official
capacities as members of the BOARD OF
TRUSTEES OF NEW PLYMOUTH
SCHOOL DISTRICT NO. 372,

                       Defendants.

Case No. 1:12-CV-00230-EJL

**MEMORANDUM DECISION AND
ORDER**

Before the Court in the above entitled matter are Defendants' Motion for

Summary Judgment (Dkt. 34) and Plaintiff's Cross-Motion for Summary Judgment

(Dkt. 35).   The parties have submitted their briefing on the motions and the matters

are now ripe for the Court's review.   Having fully reviewed the record herein, the

Court finds that the facts and legal arguments are adequately presented in the briefs

**MEMORANDUM DECISION AND ORDER - 1**

and record.   Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions shall be decided on the record before this Court without oral argument.

For the reasons stated below, the Court finds there are disputed issues of material fact which preclude granting summary judgment for either party. Defendants' and Plaintiff's cross-motions for summary judgment are accordingly **DENIED**.

## FACTUAL BACKGROUND

Plaintiff Frederic Byers (hereinafter "Plaintiff" or "Mr. Byers") was employed by Defendant New Plymouth School District No. 372 ("School District") as an elementary school teacher for over twenty-five years.   (Dkt. 37, p. 2.)   Defendant Board of Trustees, New Plymouth School District No. 372 ("School Board") is the governing body of the School District. (Dkt. 32, ¶3.)   Defendants Jolene Parini-Shipley, Herbert Foust, David Brogan, Gary Johnston and Nadine Horton are the current members of the School Board and were the members of the School Board at the time of Mr. Byers' termination.   (*Id*., ¶4.)

During his tenure with the School District, Mr. Byers worked with and developed a close friendship with Anne Moscrip ("Ms. Moscrip"), a former member

**MEMORANDUM DECISION AND ORDER - 2**

of the School Board.   (*Id*., ¶7.)   Ms. Moscrip served as a member of the School

Board for ten years, from the Spring of 2001 until the Spring of 2011.   (*Id*., ¶¶9-10.)

In the Summer of 2010, Ms. Moscrip went through a public divorce from her

husband, Scott Moscrip.   (*Id*., ¶¶8, 12.)   During and after her divorce, Mr. Byers

frequently reached out to Ms. Moscrip, through e-mails and invitations to dinner "in

an effort to help her deal with the emotional ramifications of her ongoing divorce."

(*Id*., ¶¶13-14.)

In approximately November 2010, Ms. Moscrip became troubled by Mr.

Byers' actions toward her, and spoke to School District Superintendent Ryan Kerby

("Mr. Kerby") and School Board member Jolene Parini-Shipley ("Ms.

Parini-Shipley") about her concerns.   (*Id*., ¶¶16, 19.)   In addition to serving as a

School Board member with Ms. Moscrip for a number of years, Ms. Parini-Shipley

was also Ms. Moscrip's personal friend.   (*Id*., ¶11; *Moscrip Deposition*, Dkt. 39-12,

p. 16.)   In an e-mail to Ms. Moscrip dated November 12, 2010, Ms. Parini-Shipley

stated the situation with Mr. Byers was "scary" and suggested Ms. Moscrip call 911

if she had any issues with Mr. Byers.   (*Moscrip Deposition*, Dkt. 39-13, pp. 72-73;

Dkt. 38-3, Ex. J.)

On or about November 16, 2010, Ms. Moscrip sent Mr. Byers an e-mail

asking that he cut off all communications with her and refrain from contacting her in

**MEMORANDUM DECISION AND ORDER - 3**

the future in any way.   (Dkt. 32, ¶17; Dkt. 38-3, Ex. K.)   Ms. Moscrip copied Mr.

Kerby and Ms. Parini-Shipley on the November 16, 2010 e-mail to Mr. Byers.   (*Id*.,

¶19.)   In response, Ms. Parini-Shipley e-mailed Ms. Moscrip:

I am so proud of you!   You go girl.   Like I said before, this is creepy.   Stand on
your word.   If he [Mr. Byers] does try to contact you and your family, call 911.   I
see you also sent this to Ryan [Kerby] good job, I feel much better knowing I will be
out of town for eleven days and somebody else knows about Fred [Byers] and his
creepy behavior.

(*Id*., ¶20.)

Beginning in approximately December of 2010 and continuing until roughly

June 2011, Ms. Moscrip received various anonymous text messages, e-mails and

letters, some of which were harassing in nature.   (Dkt. 32, ¶21.)   Some of the

anonymous communications were from an individual who referred to himself as

"Mike Kelly."   (*Hearing Transcript*, Dkt. 34-4, pp. 53-54.)   Ms. Moscrip did not

know anyone named "Mike Kelly," but communicated with this individual via

e-mail.   (*Id*.)   At one point, Ms. Moscrip received flowers from Mike Kelly.   (*Id*.)

Ms. Moscrip eventually came to believe that Mr. Byers was responsible for the

anonymous communications, and that Mr. Byers was, in fact, Mike Kelly.   (*Id*.)

Ms. Moscrip shared her suspicion that Mr. Byers was harassing her anonymously

with Ms. Parini-Shipley, and may have also shared such concerns with one or more

of the other members of the School Board.   (Dkt. 32, ¶23; *Moscrip Deposition*, Dkt.

**MEMORANDUM DECISION AND ORDER - 4**

39-13, p. 76.)   In approximately January 2011, Ms. Moscrip also received a text message directly from Mr. Byers, inviting her to watch the Super Bowl at his home. (*Moscrip Deposition*, Dkt.  39-13, p. 79.)

On February 9, 2011, in reference to Mr. Byers, Ms. Parini-Shipley sent Ms. Moscrip an e-mail stating, "I will be honest he is creepy so be careful."  (*Moscrip Deposition*, Dkt. 39-12, pp. 48-49; Dkt. 38-3, Ex. M.)   In another e-mail on that date Ms. Parini-Shipley advised Ms. Moscrip to consider taking out a restraining order against Mr. Byers.   (Dkt. 38-3, Exhibit N.)   Ms. Moscrip thereafter gave Ms. Parini-Shipley a file she had compiled of the anonymous texts and e-mails she suspected were from Mr. Byers.   (*Parini-Shipley Deposition*, Dkt. 39-8, pp. 32, 48.) After reviewing the file, Ms. Parini-Shipley again suggested Ms. Moscrip should take out a restraining order on Mr. Byers, and again stated that Mr. Byers was creepy.   (Dkt. 38-3, Ex. O.)

The parties dispute whether the School Board met to discuss the communications Ms. Moscrip was receiving, from either Mr. Byers or the anonymous individual, during this time.   (*Compare* Dkt. 32, ¶¶25-27 *with Kerby Deposition*, Dkt. 39-10, pp. 73-74; *Parini-Shipley Deposition*, Dkt. 39-8, pp. 49-54.)

However, various School Board members and Mr. Kerby discussed how to best proceed, and, in February, 2011, decided that School Board Member Herbert

Foust ("Mr. Foust") and New Plymouth Elementary School principal, Carrie Aguas ("Ms. Aguas"), would approach Mr. Byers and ask him to stop communicating with Ms. Moscrip.   (*Kerby Deposition*, Dkt. 39-10, pp. 73-74; *Parini-Shipley Deposition*, Dkt. 39-8, pp. 49-54.)   Shortly thereafter, Mr. Foust and Ms. Aguas visited Mr. Byers in his classroom and asked him to stay away from Ms. Moscrip and to stop contacting her.   (*Byers Deposition*, Dkt. 34-11, pp. 46-48; Dkt. 39-1, p. 5.)

The parties also dispute whether the School Board later met to discuss Mr. Byers' reaction to the visit from Mr. Foust and Ms. Aguas.   (*Compare* Dkt. 37, p. 8 *with Kerby Deposition*, Dkt. 39-10, p. 78; Dkt. 34-1, pp. 14-16.)   However, in an e-mail dated February 18, 2011, Ms. Parini-Shipley advised another school official to "stay away from Fred right now," again characterized Mr. Byers as "creepy," and suggested Mr. Byers created a "huge safety issue."   (Dkt. 38-4, Ex. Q.)   On February 22, 2011, Ms. Parini-Shipley e-mailed Ms. Moscrip and suggested she protect herself from Mr. Byers by buying a "gun, dog, bear spray, whatever you need to do for your safety" and stated "[b]e safe my friend, I am afraid this is going to heat up."   (Dkt. 38-4, Ex. S.)   Although she did not receive any communications signed by Mr. Byers after his January 2011 Super Bowl invitation, Ms. Moscrip continued to receive anonymous communications throughout the Spring of 2011.   (*See*

**MEMORANDUM DECISION AND ORDER - 6**

*generally*, *Moscrip Deposition*, Dkts. 39-12 and 39-13; *Hearing Transcript*, Dkt. 34-4.)

In April 2011, Ms. Moscrip was accepted into graduate school at the University of Idaho and decided to move to Moscow.   (*Moscrip Deposition*, Dkt. 39-12, p. 14.)   On August 15, 2011, shortly before she left for Moscow, Ms. Moscrip met with Ms. Aguas to say goodbye.   (*Hearing Transcript*, Dkt. 34-4, p. 152.)   Ms. Moscrip mentioned the anonymous texts she had received throughout the year, and Ms. Aguas stated that she had also received some anonymous texts. (*Id.*)   Ms. Moscrip and Ms. Aguas determined the anonymous texts they had both received were similar, and came to the conclusion that the texts were from Mr. Byers.   (*Id.*, pp. 169-170.)   Ms. Moscrip also mentioned that someone had been anonymously sending a topless photograph of "a woman in a red bathing suit" who was supposedly Ms. Moscrip.   (*Id.*, p. 153.)   On August 17, 2011, Ms. Aguas accessed Mr. Byers' classroom computer, and found a saved file with the topless photograph Ms. Moscrip had described.   (*Id.*, pp. 152, 170.)   Ms. Aguas immediately contacted Mr. Kerby.   (*Id.*, p. 170.)   A number of other school officials, including Mr. Kerby, had also anonymously received the topless photograph via e-mail or text. (*Id.*, p. 172; *Kerby Deposition*, Dkt. 39-11, pp. 90-93.)

**MEMORANDUM DECISION AND ORDER - 7**

On approximately August 19, 2011, Mr. Kerby placed Mr. Byers on administrative leave with pay, "due the pornography saved in a file" on Mr. Byers' computer and Mr. Kerby's belief that Mr. Byers was responsible for the anonymous communications with Ms. Moscrip.   (Dkt. 39-11, p. 93.)   That same day, Ms. Parini-Shipley contacted Ms. Moscrip to inform her that she was concerned for Ms. Moscrip's safety because Mr. Byers had been placed on administrative leave and no one knew where he was.   (*Parini-Shipley Deposition*, Dkt. 39-8, pp. 82-83; *Moscrip Deposition* Dkt. 39-12, pp. 57, 59-60.)   On August 24, 2011, Ms. Parini-Shipley also e-mailed Mr. Kirby that she was worried about "getting hurt" by Mr. Byers, and suggested Mr. Byers was "scary," and "we would be fools not to be aware of any danger."   (Dkt. 38-4, Ex. T.)   On or about September 16, 2011, School Board member David Brogan ("Mr. Brogan") also contacted Ms. Moscrip to inform her that he had seen Mr. Byers in New Plymouth and to check on her safety. (*Brogan Deposition*, Dkt. 39-4, pp. 21-26.)

During Mr. Byers' administrative leave, Ms. Aguas went through Mr. Byers' desk in order to make space for the person who would fill in for Mr. Byers. (*Hearing Transcript*, Dkt. 34-4, p. 156.)   While cleaning out Mr. Byers' desk, Ms. Aguas found a receipt for the purchase of flowers from "Mike Kelly" to Anne Moscrip.   (*Id*., pp. 159-160.)   The receipt also had Mr. Byers' phone number on it.

**MEMORANDUM DECISION AND ORDER - 8**

(*Id.*)   The computers from Mr. Byers' classroom were also seized and a forensic

analysis was conducted on their contents by a third-party agency.   (*Kerby*

*Deposition*, Dkt. 39-11, pp. 112-115.)   In February 2012, Ms. Parini-Shipley

e-mailed Mr. Kirby to inquire about the status of the investigation.   (Dkt. 38-4, Ex.

U.)   Mr. Kirby responded that, as a result of the forensic analysis, "our case [against

Mr. Byers] has become much stronger….   Much of what you saw with Anne last

year has been found.   It was deleted, but this forensic person can lift files from

deleted files, and is doing so."   (*Id.*)   Ms. Parini-Shipley responded, "Thanks, I will

be so glad when this is over."   (*Id.*)   Once Mr. Byers' termination hearing was

scheduled for the Spring of 2012, Ms. Parini-Shipley stated in an e-mail to Mr.

Kirby:

I have this strange feeling we are going to be blindsided by Fred/Pam [Mr. Byer's
wife] ….   As you know, this whole situation has made me feel really uncomfortable
about all of our safety from the start and has not let up.   I feel also that we should
have law enforcement at these meeting [sic] if nothing else as a precaution.   Not
sure how stable either one of the Byers are.

(Dkt. 38-4, Ex. W.)

In subsequent e-mails to Mr. Kirby regarding Mr. Byers' termination hearing,

Ms. Parini-Shipley expressed her fear that Mr. Byers might shoot School Board

members during the termination hearing, stated, "[t]his could get ugly.   Fred is

going to want to take as many people down with him," and lamented, "I am praying

**MEMORANDUM DECISION AND ORDER - 9**

that [Mr. Byers] just resigns and leave [sic] this community for his best interest and ours."   (Dkt. 38-4, Exs. X, Y.)

Once the computer analysis of Mr. Byers' classroom computers was complete, Mr. Kirby, in conjunction with counsel, prepared a Notice of Recommendation for Discharge of Mr. Byers, dated March 5, 2012, and an Amended Notice and Amended Recommendation for Termination ("Amended Notice"), dated March 21, 2012.[1]   (*Kirby Deposition*, Dkt. 39-11, pp. 120-125; *Hearing Transcript*, Dkt. 34-4, p. 7.)     Mr. Kirby e-mailed the Amended Notice to the School Board on March 21, 2012.   (Dkt. 38-5, Ex. CC.)   The Amended Notice outlined Mr. Kerby's recommendation that Mr. Byers be terminated for improper use of school district computers, sexual harassment, and violation of School District policies and the Code of Ethics for Idaho Professional Educators.   (*Id*.)   The Amended Notice contains factual statements conclusively stating Mr. Byers was responsible for the anonymous communications to Ms. Moscrip, rather than clarifying that such facts were merely allegations.   (*Id*.)

---

1 Mr. Kirby prepared the initial Notice of Recommendation for Discharge in conjunction with the School Board's counsel, the law firm of Eberharter-Maki & Tappen.   (*Kirby Deposition*, Dkt. 39-11, p. 123.)   After Mr. Byers filed a Notice of Tort Claim with the School District in February of 2011, the School District hired the law firm of Anderson Julian & Hull LLP to represent the administration.   (*Id*., pp. 120-122; Dkt. 37, p. 11; Dkt. 39-1, p. 7.)   The new law firm reviewed the original Notice of Recommendation for Discharge and prepared the Amended Notice at Mr. Kirby's request.   (*Kirby Deposition*, Dkt.  39-11, p. 121.)

**MEMORANDUM DECISION AND ORDER - 10**

At a special meeting on March 21, 2012, the School Board went into an executive session to read and study the Amended Notice.  (Dkt. 38-5, Ex. FF.) After a cursory review, the School Board issued the Amended Notice to Mr. Byers and a termination hearing was scheduled for April 5, 2012.  (Dkt. 37, pp. 12-14.) During the April 5, 2012 termination hearing, Mr. Byers' counsel objected to, *inter alia*, the form and content of the Amended Notice, and to the participation of Ms. Parini-Shipley, Mr. Foust and Mr. Brogan in the hearing because each was incapable of serving fairly, impartially and without bias.  (*Hearing Transcript*, Dkt. 34-4, pp. 13-15.)  Mr. Byers' counsel asked that the allegedly biased School Board members recuse themselves.  (*Id.*, pp. 19-23.)  Hearing Officer Kenneth Mallea ("Mr. Mallea") permitted Mr. Byers' counsel limited *voir dire* of the Board members. (*Id.*, p. 17.)  Each Board member testified that they would reserve judgment until hearing all of the evidence and that they could give Mr. Byers a fair hearing.  (*Id.*, pp. 23-26.)  Mr. Mallea determined the hearing would proceed despite Mr. Byers' challenge to certain School Board members' participation.  (*Id.*, pp. 26-27.)

The Administration called three witnesses during the termination hearing, Ms. Moscrip, Ms. Aguas and computer expert Dylan Evans ("Mr. Evans").  (*Id.*, 1-194.) Mr. Evans was employed with the computer forensics and investigative firm responsible for analyzing Mr. Byers' classroom computers. (*Id.*, pp. 110-115.)  The

**MEMORANDUM DECISION AND ORDER - 11**

Administration also offered twelve exhibits, totaling 330 pages, in support of the Amended Notice to terminate Mr. Byers.   (Dkt. 34-2, pp. 5-10; *Hearing Transcript*, Dkt. 34-4, pp. 1-194.)

Although Mr. Byers' counsel cross-examined each of the Administration's witnesses, and although Mr. Byers was present for the entire termination hearing, Mr. Byers did not testify and did not present any evidence or witnesses at the hearing.   (*Id*.)   Defendants thus claim Mr. Byers' chose not to participate in the hearing.   (Dkt. 34-2, p. 6; Dkt. 34-1, pp. 3-8.)   Mr. Byers, however, maintains that he did not offer any further evidence or witnesses because he believed the School Administration had failed to meet its burden in proving a case against him, and because it was impossible for Mr. Byers' to receive adequate due process at the termination hearing based on the bias of certain participating School Board members.   (Dkt. 40, p. 3.)

Following its review of the evidence submitted at the termination hearing, the School Board issued its Findings of Fact, Conclusions and Decision ("Termination Decision") on April 13, 2012, finding that there was just and reasonable cause to discharge Mr. Byers.   (Dkt. 34-11, Ex. C.)   The Termination Decision was substantially identical to the Amended Notice, and even included the same typographical errors.   (*Compare* Dkt. 38-5, Ex. CC *with* Dkt. 34-11, Ex. C.)

Further, although the School Board met to discuss the Termination Decision prior to its issuance, none of the School Board members can remember what was discussed during this meeting, nor recall how the unanimous vote to terminate Mr. Byers was taken.   (Dkt. 37, p. 15.)

## SUMMARY JUDGMENT STANDARD

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.   Rule 56 provides that judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation.   *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975).   That is, a material fact is one that is relevant to an element of a claim or defense which might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense.   *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).   Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.   *Id*.

**MEMORANDUM DECISION AND ORDER - 13**

On the other hand, an issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial."   *Hahn*, 523 F.2d at 464 (*quoting First Nat'l Bank of Ariz. v. Cities Serv. Co*., 391 U.S. 253, 289 (1968)).   Because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations.   *T.W. Elec. Serv., Inc*., 809 F.2d at 630.   Moreover, all inferences must be drawn in the light most favorable to the nonmoving party.   *Id*. at 631.

Finally, where, as here, the parties both move for summary judgment, the Court will consider each motion on its own merits.   *Fair Housing Council of Riverside Cnty. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).   In ruling on cross-motions, the Court will consider the entirety of each party's evidentiary submission, regardless of which motion (or opposition) the evidence accompanied. *Id*. at 1136-37.

## ANALYSIS

**A.   Federal and State Due Process Claims**

Mr. Byers alleges his due process rights, secured by the 14th Amendment and the Idaho Constitution, and made actionable pursuant to 42 U.S.C. § 1983,[2] were violated because several of the School Board members who presided over his termination hearing had prejudged his case and were biased against him.   (Dkt. 32, ¶¶69, 73, 80, 81.)   To establish a § 1983 claim, a plaintiff "must show that an individual acting under the color of state law deprived him of a right, privilege or immunity protected by the United States Constitution or federal law."   *Levine v. City of Alameda*, 525 F.3d 903, 905 (9th Cir. 2008) (*citing Lopez v. Dept. of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991)).   To establish a due process violation, a plaintiff must first show that he had a protected property interest under the Due Process Clause, and must then establish that he was deprived of the property without receiving the process that he was constitutionally due.   *Id.* (*citing Clements v. Airport Authority of Washoe Cnty.*, 69 F.3d 321, 331 (9th Cir. 1995)).

The parties do not dispute that, as a teacher entitled to renewable employment contracts, Mr. Byers had a property interest in continued employment under the Due Process Clause and Idaho law.   (Dkt. 34-1, p. 4; Dkt. 36, p. 3-4.)   Thus, the central question is whether Mr. Byers received adequate procedural due process.   The "root requirement of the Due Process Clause [is] that an individual be given an

---

2 42 U.S.C. § 1983 works to create "a species of tort liability" in favor of individuals who are deprived of "rights, privileges, or immunities secured" to them by the Constitution. *Carey v. Piphus*, 435 U.S. 247, 253 (1978).

**MEMORANDUM DECISION AND ORDER - 15**

opportunity for a hearing before he is deprived of any significant property interest." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (internal citation and quotation omitted).   Although the pre-termination hearing "need not be elaborate, 'some kind of hearing' must be afforded to the employee prior to termination."   *Clements*, 69 F.3d at 331-32 (*quoting Loudermill*, 470 U.S. at 541). At a minimum, Due Process also requires a hearing before an impartial tribunal. *Clements*, 69 F.3d at 333 (*citing Ward v. Village of Monroeville*, 409 U.S. 57, 59-60 (1972)); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process"); *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970) (an impartial decision-maker is essential to due process).   The requirement that proceedings which "adjudicate individuals' interests in life, liberty, or property be free from bias and partiality has been 'jealously guarded.'" *Clements*, 69 F.3d at 333 (*quoting Marshall v. Jerrico*, 446 U.S. 238, 241-42 (1980)).   The neutrality principal has thus been applied to a variety of settings, including administrative adjudications.   *Id*.   "Not only is a biased decisionmaker constitutionally unacceptable but 'our system of law has always endeavored to prevent even the probability of unfairness.'"   *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (*quoting In re Murchison*, 349 U.S. at 136).

**MEMORANDUM DECISION AND ORDER - 16**

Policy makers with decision-making power, such as the School Board in this case, enjoy a presumption of honesty and integrity.   *Hortonville Joint School Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 497 (1976).   Mere prior involvement in or familiarity with the events involving a contested decision is insufficient to overcome this presumption.   *Id.*; *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (the combination of investigative fact gathering and adjudicatory functions, without more, does not result in unconstitutional bias).   To rebut an administrative board's presumption of honesty, a plaintiff must demonstrate that the tribunal was actually biased, or that there was an impermissible appearance of bias. *Withrow*, 421 U.S. at 47, 55.   Unconstitutional appearance of bias can be established by evidence of personal animosity between the party and the decision-maker.   *Id*.

Mr. Byers asserts actual bias and impermissible appearance of bias by the School Board and points to facts to support his assertions.   As detailed, *supra*, there is evidence to suggest that Ms. Parini-Shipley harbored animosity towards Mr. Byers, and that she had already decided Mr. Byers should be terminated long before she participated in his termination hearing.   Beginning in November 2010 and continuing throughout the months preceding Mr. Byers' April 2012 termination hearing, Ms. Parini-Shipley repeatedly characterized Mr. Byers as "creepy" and

"unstable," suggested Mr. Byers presented a safety issue to both Ms. Moscrip and the School Board, encouraged Ms. Moscrip to obtain a restraining order against Mr. Byers, and stated Ms. Moscrip should buy a "gun, dog, bear spray" or anything else she could to protect herself from Mr. Byers.   Shortly before the termination hearing, Ms. Parini-Shipley stated she hoped Mr. Byers would just resign and move, for his good and for the good of the community, and even suggested that Mr. Byers might shoot School Board members.   Ms. Parini-Shipley also went so far as to indicate that local law enforcement should attend the termination hearing to protect the School Board from Mr. Byers.   In light of such evidence, the suggestion that Ms. Parini-Shipley had not prejudged Mr. Byers or determined that he was responsible for the conduct alleged before the termination hearing occurred strains even the most generous inference in favor of Defendants.

Mr. Byers also presented evidence of bias on behalf of other members of the School Board, such as Mr. Foust, who approached Mr. Byers over a year before the termination hearing and directed him not to have any further contact with Ms. Moscrip, and Mr. Brogan, who contacted Ms. Moscrip in September 2011 to check on her safety and alert her that Mr. Byers was in New Plymouth.[3]   Although

---

3 Mr. Byers also presented evidence that counsel for the School Administration, the law firm of Anderson, Julian & Hull LLP, represented the School Board in both its prosecutorial and adjudicative role.   (Dkt. 36, pp. 13-16.)   Several courts have held that where a school district's attorney represents or assists school district administration in a

**MEMORANDUM DECISION AND ORDER - 18**

Defendants suggest that Mr. Foust and Ms. Aguas approached Mr. Byers and asked

him to stop contacting Ms. Moscrip in February 2011 solely because of Mr. Byers'

Super Bowl invitation, it seems unlikely that a text invitation to a family Super Bowl

party would have triggered such concerted action if members of the school

administration and Board had not already decided that Mr. Byers was also

responsible for the anonymous communications to Ms. Moscrip.   It also seems

unlikely that Mr. Brogan did not believe Mr. Byers was harassing Ms. Moscrip in

September 2011, seven months before the termination hearing, when he called Ms.

Moscrip to check on her safety and to let her know he had seen Mr. Byers in New

Plymouth.   While this evidence is less probative of bias than is that involving Ms.

Parini-Shipley, Mr. Byers has met his burden of establishing at least the appearance

of bias.   *See Withrow*, 421 U.S. at 55 (a plaintiff may rebut the presumption of

honesty of a decision-maker with evidence that the decision-makers had reached a

decision regarding the outcome of a hearing before the hearing occurred.)

---

prosecutorial role and then provides counsel to a decision-maker, including a school board, such a dual role creates an appearance of impropriety which violates due process.   *See, e.g., Gonzales v. McEuen*, 435 F.Supp. 460, 464-65 (C.D. Cal. 1977); *Miller v. Ririe Joint School Dist. No. 252*, 132 Idaho 385, 389 (1999).   Defendants counter that Mr. Byers has "blatantly misrepresented the level of Anderson, Julian & Hull's involvement in this case" and that the law firm acted as counsel only for the School Administration, and not for the School Board.   (Dkt. 39, pp. 6-7.)   Like the issue of personal bias on behalf of the School Board, the Court finds the scope of Anderson, Julian & Hull's representation of the School Board is a disputed factual issue appropriately left to a jury.

**MEMORANDUM DECISION AND ORDER - 19**

Further, "where one member of a tribunal is actually biased, or where circumstances create the appearance that one member is biased, the proceedings violate due process." *Stivers v. Pierce*, 71 F.3d 732, 748 (9th Cir. 1995). The plaintiff "need not demonstrate that the biased member's vote was decisive or that his views influenced those of other members. Whether actual or apparent, bias on the part of a single member of a tribunal taints the proceedings and violates due process." *Id.* The evidence Mr. Byers has presented of Ms. Parini-Shipley's apparent bias is alone sufficient to create a genuine issue of material fact as to whether Mr. Byers received a constitutional hearing before an impartial tribunal. Despite the substantial evidence suggesting bias, Ms. Parini-Shipley testified at the termination hearing that she would reserve judgment until after considering all of the evidence presented at the termination hearing, and that she would give Mr. Byers a fair hearing. (*Hearing Transcript*, Dkt. 34-4, p. 24.) Each of the other Board Members also so testified. (*Id.*) Ms. Parini-Shipley also stated in her deposition that she was not biased against Mr. Byers prior to the termination hearing, and that she believed she could make her decision fairly based on the evidence presented at the termination hearing. (*Parini-Shipley Deposition*, Dkt. 39-8, pp. 64-68, Dkt. 39-9, pp. 123-124.) The other School Board members similarly stated in their depositions that they were not biased against Mr. Byers and they had reserved

**MEMORANDUM DECISION AND ORDER - 20**

judgment until they heard the evidence at the termination hearing.   (*See, e.g.,*

*Brogan Deposition*, Dkt. 39-4, p. 52; *Foust Deposition*, Dkt. 39-5, pp. 78-79.)

Whether or not the School Board members were biased is thus clearly a disputed

issue of material fact.

      At this stage of the litigation, the Court may not weigh conflicting evidence

with respect to disputed material facts.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 255(1986).   Nor may the Court make credibility determinations, as "the

weighing of the evidence, and the drawing of legitimate inferences from the facts are

jury functions, not those of a judge, whether he is ruling on a motion for summary

judgment or for a directed verdict."   *Id*.   Thus, the Court cannot grant Mr. Byers'

Motion for Summary Judgment despite the evidence of bias he has presented.   It is

up to a jury to weigh the evidence and testimony to determine whether the

termination hearing was unconstitutionally tainted by bias.   *See*, *e.g.*, *Stivers*, 71

F.3d at 748 ("Of course, we do not decide whether [defendant] was actually biased

against [plaintiff].   We hold only that the evidence raises a triable issue of fact as to

whether plaintiff was deprived of the licenses he sought without due process");

*Clements*, 69 F.3d at 334 (plaintiff's assertions of bias and facts in support raised a

material issue of fact as to the adequacy of post-termination proceedings); *McClure*

*v. Independent School Dist. No. 16*, 228 F.3d 1205, 1216 (pre-termination

**MEMORANDUM DECISION AND ORDER - 21**

statements by school board members regarding their intent to fire plaintiff prior to termination hearing raised a genuine issue of material fact as to whether board members were biased when they voted to terminate plaintiff).   Plaintiff's Motion for Summary Judgment must accordingly be **DENIED**.

    *1.*    *Waiver*

Defendants' primary argument in support of their Motion for Summary Judgment is that Mr. Byers waived his right to attack the adequacy of the April 5, 2012 termination hearing because he knowingly and willfully chose not to participate in the hearing.   (Dkt. 34-1, pp. 4-8.)   In support of this argument, Defendants highlight a number of cases holding where adequate administrative procedures are available, a person cannot state a claim for denial of due process if they elect to forego a complete hearing.   *Bignall v. North Idaho College*, 538 F.2d 243, 247 (9th Cir. 1976); *Correa v. Nampa School Dist. No. 131*, 645 F.2d 814 (9th Cir. 1981) (voluntary failure to utilize available procedures precludes claim of inadequate due process); *Ferguson v. Bonner Cnty. School Dist. No. 82*, 98 Idaho 359 (1977) (plaintiff could not establish a due process violation where he elected not to present any evidence and walked out of his due process hearing); *Bowler v. Bd. of Trustees*, 101 Idaho 537 (1980) (plaintiff must prove lack of procedural safeguards caused prejudice).   Defendants claim Mr. Byers elected not to utilize the rights

contemplated by state and federal due process considerations because he did not call any witnesses, did not testify on his own behalf, and did not provide any documentary evidence to rebut the Administration's proffered evidence at his termination hearing.   (Dkt. 34-1, p. 7.)

Although procedural due process rights may be waived, "'[c]ourts indulge every presumption against the waiver of fundamental constitutional rights.'"   *Pitts v. Board of Education of School Dist. 205*, 869 F.2d 555, 557 (10th Cir. 1989) (citation omitted).   Whether due process rights have been waived "depends upon the facts of a particular case," and waiver is valid only "if it is done in an informed matter."   (*Id.*) (*citing Johnson v. U.S. Dep't of Agriculture*, 734 F.2d 774, 784 (11th Cir. 1984)).   Further, a plaintiff may waive due process rights by electing to forego a hearing only if the suggested hearing would have been adequate.   *Bignall v. North Idaho College*, 538 F.2d 243, 247 (9th Cir. 1976).   Where, as here, a suggested hearing is potentially inadequate due to board member bias, a plaintiff need not participate in the hearing in order to avoid waiving due process rights.

In *Bignall*, the Ninth Circuit noted defendant college violated plaintiffs' procedural rights only if it offered an inadequate hearing.   "If the suggested procedure would have been adequate, [plaintiffs] cannot state a claim . . . for denial of their procedural rights when they themselves elected to forego a complete

**MEMORANDUM DECISION AND ORDER - 23**

hearing." *Id.*   The *Bignall* Court determined plaintiffs aborted the

decision-making process when they prematurely withdrew from a pre-termination

hearing.   However, the *Bignall* Court also noted that plaintiffs had not "waived"

their due process rights by abandoning the hearing because the plaintiffs would not

have received due process by continuing the hearing due to inadequate notice.   *Id.*,

at 248.   Where, as here, it is disputed whether a pre-termination hearing would have

been constitutionally adequate, a plaintiff cannot be found to have waived his due

process rights by failing to participate in the hearing.   *Id.*, at 247, n. 3 (noting

plaintiffs' withdrawal was appropriate if the hearing would have been

constitutionally inadequate); *see also Hayes v. Cape Henlopen School Dist.*, 341

F.Supp. 823, 830 (D. Del. 1972) ("An individual is not obligated to pursue

procedures which are inherently futile or which because of existing administrative

prejudice would be unproductive.").

The additional cases cited by Defendants in support of their waiver argument

are also each distinguishable from the instant case.   First, unlike the plaintiffs in

*Correa v. Nampa School Dist. No. 131*, 645 F.2d 814 (9th Cir. 1981) and *Ferguson

v. Bd. of Trustees of Bonner Cnty. School Dist. No. 82*, 98 Idaho 359 (1977), Mr.

Byers attended the entirety of the termination hearing, and did not leave during, or

forego attending the hearing all together.   Moreover, there was no evidence in

either *Correa* or *Ferguson* that the hearing would have been inadequate due to bias or some other constitutional infirmity. *Correa*, 645 F.2d at 817 ("there is no evidence that the District's procedures were inadequate."); *Ferguson*, 98 Idaho at 365 ("the record suggests that the board was prepared to deal fairly and open-mindedly with the issue if the hearing had proceeded.")[4]

Second, unlike the plaintiffs in *Bowler v. Board of Trustees of School Dist. No. 392*, 101 Idaho 537, 541 (1980) and *Pitts v. Board of Education of U.S.D.* 305, 869 F.2d 555, 556 (10th Cir. 1989), Mr. Byers did not formally waive or stipulate to a waiver of procedural due process protections.

Finally, in *Martyr v. Mazur-Hart*, 789 F.Supp. 1081, 1088 (D. Or. 1992), the court determined plaintiff mental institution patient waived his procedural due process challenge to defendant institution's censorship of outgoing mail where plaintiff failed to use the available four level patient grievance procedure prior to filing suit. In so holding, however, the *Martyr* court specifically noted that there was no indication that the grievance procedure plaintiff had failed to utilize would have been inadequate. Where there is instead evidence that the available procedure

---

4 Although Plaintiff in *Ferguson* alleged bias because the board had received evidence to support his discharge prior to the hearing, the court determined there was no evidence of actual bias as a result of such prior knowledge. *Id*. at 365. By contrast, Mr. Byers has submitted evidence to suggest more than just familiarity with the facts, but actual bias by the School Board against Mr. Byers due to their belief that Mr. Byers was responsible for the anonymous communications to Ms. Moscrip.

**MEMORANDUM DECISION AND ORDER - 25**

would have been inadequate due to bias, a plaintiff cannot be held to have waived due process protections by failing to utilize such procedures.

Defendants also suggest that, in addition to waiving his due process challenge by failing to present any evidence at the hearing, Mr. Byers also waived such rights by ignoring pre- and post- hearing procedures which were available to him to protect his rights.   (Dkt. 34-1, pp. 7-8.)   Specifically, Defendants claim Mr. Byers could have utilized "pre" hearing procedures by obtaining a protective order before the hearing to preclude the allegedly biased School Board members from participating. Defendants cite *Johnson v. Bonner County School Dist. No. 82*, 126 Idaho 490, 494 (1994) in support of this contention.   In *Johnson*, a teacher sought a temporary restraining order to prevent his termination hearing from going forward because he believed the school board presiding over his hearing was biased.   The trial court ruled that it did not have power to grant injunctive relief, and the hearing went forward.   Although the issue was moot because the hearing had already been held, the Idaho Supreme Court addressed the issue of whether a trial court has the power to grant injunctive relief to prevent a biased decision-maker from conducting a due process hearing.   The court determined a trial court may enjoin a biased decision-maker from conducting a hearing "upon a showing that there is a probability that the decisionmaker will decide unfairly any issue presented in the

hearing." *Id*. at 38.   As Plaintiff notes, however, there is a significant difference between having the *ability* to seek injunctive relief, and being *required* to seek such relief or risk waiving one's due process rights.   (Dkt. 40, p. 7.)   Moreover, in this case, much of the evidence of the School Board's potential bias was not uncovered until after this suit was filed and discovery was completed.   (*Id*.)   Mr. Byers thus may not have had sufficient evidence of Board member bias prior to the hearing to obtain injunctive relief.   Mr. Byers did not waive his due process rights by failing to obtain injunctive relief prior to the hearing.

Defendants also claim Mr. Byers waived his due process rights by failing to utilize the statutory post-hearing procedure of appealing the Board's decision to state district court.   (Dkt. 34-1, p. 7) (*citing* Idaho Code § 33-513(m) (2012)).   However, Defendants do not cite any authority for the proposition that an appeal under I.C. § 33-513(m) is required before an action can be filed under 42 U.S.C. § 1983.   Further, I.C. §33-513(m) only allows a state court to set aside a School Board's decision on three limited grounds, or where:

(1)  …the findings of fact are not based upon any substantial, competent evidence;
(2)  …the board of trustees has acted without jurisdiction or in excess of its authority; or
(3)  …the findings by the board of trustees as a matter of law do not support the decision.

**MEMORANDUM DECISION AND ORDER - 27**

This statutory provision arguably does not provide potential relief for a teacher forced to defend a termination before a biased board.   Finally, the Supreme Court has categorically rejected the argument that a § 1983 plaintiff must exhaust state administrative remedies prior to bringing suit in federal court.   *Patsy v. Board of Regents of the State of Florida*, 457 U.S. 496, 500 (1982); *see also Bignall v. North Idaho College*, 538 F.2d 243, 246 (9th Cir. 1976) ("The plaintiff in a section 1983 suit usually does not need to exhaust either state judicial or administrative remedies").   Mr. Byers thus did not waive his due process rights by failing to appeal the School Board's decision to the state district court.

In sum, the Court finds there are disputed issues of material fact with respect to whether the termination hearing was tainted by unconstitutional bias.   The Court also finds that Mr. Byers did not waive due process protections both because he participated in the hearing and because, even if he had not attended and cross-examined witnesses at the hearing, Mr. Byers could not waive due process protections by failing to participate if the termination hearing was constitutionally inadequate.   Finally, the Court finds Mr. Byers did not waive due process protections by failing to utilize purported pre- and post- hearing procedures.

**MEMORANDUM DECISION AND ORDER - 28**

Defendants' Motion for Summary Judgment with respect to Mr. Byers' federal and state due process claims is accordingly **DENIED**. [5]

2.    *Damages*

Defendants argue that, under *Carey v. Piphus*, 435 U.S. 247, 266-67 (1978), Mr. Byers' procedural due process claim is limited to nominal damages of one dollar.   In *Carey*, plaintiff elementary and secondary school students claimed they had been suspended from school without procedural due process.   The District Court found the students' rights had been violated but failed to award damages. The students appealed and the Court of Appeals for the Seventh Circuit held the students were entitled to recover substantial non-punitive damages even if the students' suspensions were justified, and even if the students did not prove that any other actual injury was caused by the denial of procedural due process.   The Supreme Court reversed and remanded, noting that in the absence of proof of actual injury, the students were entitled to recover only nominal damages.

---

5 Defendants note, for the first time in their Reply in Support of Defendants' Motion for Summary Judgment, that Plaintiff is limited to equitable remedies and is not entitled to money damages for any violation of the Idaho Constitution.   (Dkt. 41, p. 9.)   As Defendants have raised this argument for the first time in their Reply, the Court will not issue a ruling on the available remedies under the Idaho Constitution at this point.   *Lacey v. Maricopa Cnty.*, 649 F.3d 1118, 1138, n. 11 (9th Cir. 2011).   The appropriate remedy for state constitutional violations, if any, will be determined when liability is or is not established at trial.

**MEMORANDUM DECISION AND ORDER - 29**

In so holding, the *Carey* Court noted the record below had been "completely devoid of any evidence which could even form the basis of a speculative inference measuring the extent of [plaintiffs'] injuries." *Id*. at 252.   The Supreme Court noted that the students may be entitled to damages for distress caused by the deprivation of due process itself, however, the students could not recover damages for distress caused by a justified deprivation without proof of injury.   The Supreme Court explained:

[W]here a deprivation is justified but procedures are deficient, whatever   distress a person feels may be attributable to the justified deprivation rather than to the deficiencies in procedure.   But as the Court of Appeals held, the *injury caused by a justified deprivation, including distress, is not properly compensable under § 1983*.

*Id*. at 263 (emphasis added).

Although the *Carey* Court limited the availability of compensatory damages for a justified deprivation, the Court went on to note "[e]ven if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process."   *Id*., at 266.   Further:

Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed . . . we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual damages.   We therefore hold that if, upon remand, the District Court determines that respondents' suspensions were justified,

**MEMORANDUM DECISION AND ORDER - 30**

respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.

*Id.*

Although this case is distinguishable from *Carey* because Mr. Byers has alleged injury caused by the denial of procedural due process itself (Dkt. 32, ¶¶ 71, 78; *see also Byers Deposition*, Dkt. 34-11, pp. 64-68) Mr. Byers' cannot recover damages for such injury unless the termination that resulted from the deprivation of due process was not justified.   *Id.*, at 263, 266.

Plaintiff amended his complaint to omit any allegation that the Board's decision was erroneous or was not supported by "just and sufficient cause."   (Dkt. 26; Dkt. 32.)   Plaintiff also seeks to exclude any evidence regarding whether his termination was justified at trial.   (Dkt. 48; Dkt. 49.)   However, to avoid liability for the damages associated with Plaintiff's termination, at least with respect to Plaintiff's due process claim, Defendants are entitled to present evidence that they would have made the same decision even absent a constitutional violation. *McClure v. Independent School Dist.*, 228 F.3d 1205, 1213-1214 (10th Cir. 2000) ("In *Carey*, the Supreme Court held that when a procedural due process violation occurs and adverse action results, damages for injuries caused by the adverse action may not be recovered if the defendant can prove the action would have been taken even absent the violation.")

**MEMORANDUM DECISION AND ORDER - 31**

In *Bowler v. Board of Trustees of School Dist. No. 392*, 101 Idaho 537 (1980), a terminated teacher ("Bowler") with renewable contract rights alleged that his termination violated due process in several respects, including that he had not been given a statement of reasons for his discharge.   The lower court entered summary judgment in favor of defendant school board.   The Supreme Court reversed and remanded, finding that a statement of reasons was constitutionally required under the circumstances.   *Id.* at 544 (*citing Mathews v. Eldridge*, 424 U.S. 319 (1976)). In so holding, however, the Court held that, upon remand, Bowler would bear the burden of showing that any procedural error had been prejudicial.   *Id.* (citations omitted).   The Court noted that Bowler had not alleged that the board's failure to provide him with a statement of reasons had in any way affected his ability to assert his substantive rights, and had not asserted on appeal that he was fired without good cause, nor discharged in breach of contract.   *Id.*   The Court significantly stated:

Similarly, in order to prevail on his claim for damages, [Bowler] must demonstrate that the decision of the board was substantively erroneous.   It is now well established that where the deprivation of a protected liberty or property interest is substantively justified, but procedurally defective, the plaintiff is entitled to recover only nominal damages.   Actual damages are not inherent where there exists only a technical procedural defect unaccompanied by a corresponding erroneous substantive deprivation. . . .   Thus, in order to prevail, [Bowler] must allege and prove either that his employment contract was breached by the board or that he was unjustifiably discharged.   If not, he would not be entitled to reinstatement and would only be entitled to nominal damages for the technical breach of his procedural due process rights.

**MEMORANDUM DECISION AND ORDER - 32**

*Id*. at 545 (*citing Carey*, 435 U.S. 247).

Plaintiff argues that he has not admitted "just and sufficient cause" existed to support his termination, and simply made "a strategic decision to dismiss his separate claims based on just and sufficient cause in order to focus the inquiry upon whether Mr. Byers was provided adequate due process[.]"   (Dkt. 40, pp. 19-20.) However, if Defendants are to be held liable for the compensatory damages flowing from Plaintiff's termination because the termination violated due process, Defendants are entitled to present evidence that they would have made the same decision even in the absence of a constitutional violation.   *McClure*, 228 F.3d at 1213.

Plaintiff's damage award, if any, thus depends on disputed issues of material fact.   If Plaintiff's termination violated due process, but the termination was justified, Plaintiff is entitled to only nominal damages.   *Carey*, 435 U.S. at 263. However, if the termination violated due process and the termination was not justified, Plaintiff is entitled to "all the compensatory damages flowing from [the] termination because [the] termination will have directly resulted from the denial of due process."   *McClure*, 228 F.3d at 1214.   The Court cannot accordingly rule as a matter of law that Plaintiff's damages are limited to nominal damages.   Plaintiff's entitlement to damages will depend upon the jury's determination with respect to

**MEMORANDUM DECISION AND ORDER - 33**

whether there was a due process violation and, if such violation occurred, whether Plaintiff's termination was nonetheless justified.

### B. Idaho's Open Meetings Act

Mr. Byers alleges multiple Board members met, in violation of Idaho's Open Meetings Act, on multiple occasions before the April 5, 2012 termination hearing, to discuss the allegations against Mr. Byers and to form opinions about how to discipline Mr. Byers.   (Dkt. 32, ¶¶89-91.)   Mr. Byers seeks to have the School Board's actions, including his termination, declared null and void, as such actions allegedly resulted from meetings that failed to comply with Idaho's open public meetings laws.   (*Id.*)

The Idaho Open Meetings Act, I.C. §§ 67-2340 *et. seq*., defines a meeting as "the convening of a governing body of a public agency to make a decision or to deliberate toward a decision on any matter."   I.C. § 67-2341(6).   The Open Meetings Act provides that all such meetings must "be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act."   I.C. § 67-2342(1).   The Open Meetings Act further requires that meetings be preceded by public notice, I.C. § 67-2343, and that written minutes be taken, I.C. § 67-2344.   Although the Open Meetings Act invalidates actions taken at a meeting which does not conform to the Act's requirements, I.C. § 67-2347, the

**MEMORANDUM DECISION AND ORDER - 34**

Open Meetings Act does not invalidate the ultimate decision of a public body which may have discussed a decision prior to a publically open hearing.   *State ex. rel. Roark v. City of Hailey*, 102 Idaho 511, 514 (1981) ("*Roark*") ("where deliberations are conducted at a meeting violative of the Open Meetings Act but no firm and final decision is rendered upon the questions then discussed, the impropriety of that meeting will not taint final actions subsequently taken upon questions conscientiously considered at subsequent meetings which do comply with the provisions of the act.").

The parties dispute both whether the School Board met in violation of the Open Meetings Act prior to Mr. Byers' termination hearing, and whether a "firm and final decision" was made as to disciplining Mr. Byers prior to the termination hearing.   Mr. Byers suggests the School Board met in one or more unnoticed meetings to decide Ms. Moscrip's allegations were true, thus necessitating Mr. Byers' termination.   (Dkt. 40, p. 12.)   Mr. Byers also argues that Ms. Moscrip, Ms. Parini-Shipley and Mr. Foust were each involved in the "firm and final decision," in February 2011, to have Mr. Foust confront Mr. Byers about the anonymous communications Ms. Moscrip believed were being sent by Mr. Byers.   (*Id*.) Defendants contend that Plaintiff has not cited any admissible evidence to suggest that the Board met and decided the allegations against Mr. Byers were true, nor

**MEMORANDUM DECISION AND ORDER - 35**

provided any evidence to indicate a "firm and final decision" was made to have Mr.

Foust confront Mr. Byers about the anonymous communications.   (Dkt. 41, p. 5.)

Defendants instead characterize the February 2011 meeting as "nothing more than

an informal discussion informing Mr. Byers that he was not to contact Ms. Moscrip

under any circumstances, not official Board action."   (*Id*.)   Defendants also

contend that even if one accepts Plaintiff's factual allegations as true, Plaintiff's

Open Meetings Act claim still fails as a matter of law because the final decision to

terminate Mr. Byers was the product of a properly noticed and conducted hearing.

(Dkt. 34-1, pp. 16-17) (noting Plaintiff's claim should be dismissed under *Roark*

because the ultimate decision to discharge Mr. Byers was rendered after the April 5,

2012 termination hearing).

        The problem with Defendants' argument is that it is not undisputed that the

decision to terminate Mr. Byers was in fact made during the open termination

hearing.   Instead, as previously detailed, there is evidence to suggest the School

Board had already decided Mr. Byers should be terminated long before the

termination hearing occurred.   Although Mr. Byers has not provided detailed

allegations regarding the specifics of the School Board's conversations and

meetings prior to the termination hearing, it is not clear how Mr. Byers could

provide such evidence where such meetings were neither documented nor open to

**MEMORANDUM DECISION AND ORDER - 36**

the public, and where the Board members themselves provide conflicting testimony about whether such meetings occurred, and are unable to recall how the unanimous decision to terminate Mr. Byers was ultimately made.   (*See generally Parini-Shipley Deposition*, Dkt. 39-8, pp. 40, 51-54, 162-170; *Horton Deposition*, Dkt. 39-6, pp. 89-11; *Brogan Deposition*, Dkt. 39-4, pp. 31-33, 61-64; *Foust Deposition*, Dkt. 39-5, pp. 32-37, 43-47,   74-77, 86-90.)   Mr. Byers has, however, presented evidence to at least raise a disputed issue of material fact as to whether the School Board members violated the Open Meetings Act by making the decision to terminate him in a meeting held in violation of the act's requirements.[6]   Mr. Byers' Open Meetings Act claim accordingly survives summary judgment.[7]

### C. Negligent Infliction of Emotional Distress

Mr. Byers also raise a claim for negligent infliction of emotional distress. There are five elements to a claim for negligent infliction of emotional distress under

---

[6] Accepting every inference in favor of Plaintiff, as the Court must for purposes of summary judgment, this may represent a case where a "public body arrived at a secret, binding decision in closed session, later re-emerging to public view to enter a ceremonial, pro forma final decision."   *Roark*, 102 Idaho at 513.

[7] If the jury determines Defendants violated the Open Meetings Act in deciding to terminate Plaintiff, the termination decision shall be null and void.   I.C. § 67-2347(1). However, as Defendants note, the Open Meetings Act does not allow a private right for damages arising out of a violation.   I.C. § 67-2347(6) ("there shall be no private right of action for damages arising out of any violation of the provisions of sections 67-2342 through 67-2346, Idaho code.").   Thus, Plaintiff cannot recover damages for violation of the Open Meetings Act.

**MEMORANDUM DECISION AND ORDER - 37**

Idaho law: (1) the existence of a duty; (2) breach of that duty; (3) proximate cause; (4) damages; and (5) physical manifestation of injury.   *Sommer v. Elmore Cnty*., 903 F.Supp.2d 1067, 1075 (D. Idaho 2012).   Defendants challenge the first element, or existence of a duty requiring the School Board to take reasonable steps to conduct an unbiased hearing.   (Dkt. 34-1, p. 17.)   Plaintiff argues that 42 U.S.C. § 1983 provides the statutory duty in support of Plaintiff's claim for negligent infliction of emotional distress, but does not identify a recognized duty under state law.   (Dkt. 40, pp. 13-15.)

In their Reply Brief, Defendants suggest that the *Sommer* Court held a claim for negligent infliction of emotional distress is not available in the employment context, even where an employee claimed the employer had violated her due process rights.   *Id*. at 1076 (*citing Feltmann v. Petco Animal Supplies, Inc*., 2012 WL 1189913 (D. Idaho 2012)).   The Court notes that in *Sommer*, plaintiff was an at-will employee with no reasonable expectation of continued employment.   *Id*.   *Sommer* may not apply here, given Mr. Byers' property interest in continued employment.

However, even if Mr. Byers cannot establish a duty under state law, Mr. Byers also seeks damages for negligent infliction of emotional distress under 42 U.S.C. § 1983, which may be available.   *Carey*, 435 U.S. at 264.   Thus, even without the

**MEMORANDUM DECISION AND ORDER - 38**

state law claim for negligent infliction of emotional distress, Mr. Byers may be entitled to damages for emotional distress under 42 U.S.C. § 1983.

In *Carey*, the Supreme Court noted that mental and emotional distress damages caused by the denial of procedural due process itself are compensable under § 1983, provided causation and injury are established.   435 U.S. at 264. However, as previously discussed, such damages are not available where a deprivation is justified but procedures are deficient, as "the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983." *Id.* at 263.   Thus, Plaintiff's negligent infliction of emotional distress claim, and ability to obtain more than nominal damages on such claim,[8] depends on whether the School Board's termination decision was justified.   Plaintiff's negligent infliction of emotional distress tort claim survives summary judgment because it depends on whether or not Plaintiff's termination was justified, a disputed issue of material fact.

### D.  Breach of Contract

Finally, Defendants argue Mr. Byers' breach of contract claim fails as a matter of law because his teaching contract:

[O]nly incorporates 'relevant' educational law—not all the laws of the State of Idaho, and does not specifically incorporate the Open Meeting Act as part of his

---

[8] "In Idaho, plaintiffs may not recover for emotional distress in breach of contract cases." *Thomas v. Medical Center Physicians, P.A.*, 138 Idaho 200, 211 (2002).

procedural due process protection.   To the contrary, regarding Plaintiff's due process rights, there is relevant, applicable educational law that very specifically delineates all the Board's procedural requirements [I.C. § 33-513(5)] and Plaintiff's attempt to graft the Open Meeting Act to the contract as an enforceable term inevitably reads a provision into the contract not intended by the parties.

(Dkt. 34-1, p. 17.)

Mr. Byers' teaching contract states, in relevant part:

It is understood and agreed between the parties that this Contract is subject to the applicable laws of the State of Idaho, the duly adopted rules of the State Board of Education and the policies of the District which are, by reference, incorporated herein and made a part of this agreement the same as if fully set forth herein. . . . .   It is mutually understood and agreed by and between the parties that nothing herein contained shall operate or be construed as a waiver of any of the rights, powers, privileges, or duties of either party hereto, by and under the laws of the State of Idaho, except as expressly stated in this Contract.

(Dkt. 34-6, Ex. B, NPSD 606.)

Although the contract does not specifically state that the Open Meeting Act is an "applicable" law of the State of Idaho, existing law becomes a part of a contract, just as though the contract contains an express provision to that effect, unless a contrary intent is disclosed.   *Robinson v. Joint School Dist. No. 150*, 100 Idaho 263, 265 (1979); *see also Fidelity Trust Co. v. State*, 72 Idaho 137, 149 (1951) ("it is axiomatic that extant law is written into and made a part of every written contract.") Mr. Byers' teaching contract does not suggest any intent to exclude application of the Open Meetings Act and, indeed, expressly incorporates Idaho laws unless expressly waived.   The Open Meetings Act is not expressly waived in the contract.

**MEMORANDUM DECISION AND ORDER - 40**

Nor, of course, does the teaching contract waive Mr. Byers' due process rights under the United States and Idaho Constitutions.   Whether Defendants violated the Open Meetings Act or the United States and Idaho Constitutions, and whether they are liable for breach of contract as a result, are disputed issues of material fact precluding summary judgment on Plaintiff's breach of contract claim. Thus, Plaintiff's available damages for a breach of contract claim, if any, shall be determined if liability is established.

## ORDER

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (Dkt. 35) is **DENIED**.   Defendants' Motion for Summary Judgment (Dkt. 34) is also **DENIED**.   Trial is scheduled to begin on November 19, 2013.

DATED: November 5, 2013

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER - 41**